**Shirley B. HEFLIN**

v.

**David MATHEWS, Secretary of Health, Education and Welfare.**

**Civ. No. HM75–527.**

United States District Court, D. Maryland.

Jan. 20, 1976.

**1402**

Charles S. Lazer, Kensington, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., D. Md., and Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md.; Stephanie W. Naidoff, Regional Atty., and Diane C. Moskal, Asst. Regional Atty., Region III, Department of Health, Education and Welfare, Philadephia, Pa., for defendant.

## MEMORANDUM

HERBERT F. MURRAY, District Judge.

This is an action brought under Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to review a final decision of the Secretary of Health, Education and Welfare, denying plaintiff's claim for a period of disability and for disability insurance benefits. Plaintiff contends that the Secretary's finding was unsupported by substantial evidence. She requests that the court reverse the decision of the Secretary and order payment to her of disability benefits, or in the alternative, remand the case to the Secretary for further consideration. The case presently appears before the Court on the defendant Secretary's motion for summary judgment.

### Administrative Proceedings

Plaintiff filed an application for a period of disability and for disability insurance benefits on June 27, 1973, alleging that she became unable to work on January 17, 1962, at age 41, because of her heart condition, cirrhosis of the liver, anemia and hernia. The application was denied initially and again on reconsideration by the Bureau of Disability Insurance of the Social Security Administration, after the Maryland State Agency, upon evaluation of the evidence submitted by the plaintiff with her application, had found that the plaintiff was not under a disability. Plaintiff appeared without counsel at a subsequent *de novo* hearing before Administrative Law Judge Henry A. Milne on August 23, 1974. The Administrative Law

Judge found that the plaintiff had last met the earnings requirement for purposes of disability benefits on September 30, 1967, and consequently had to prove that she was "disabled" within the meaning of the statute at or prior to that time. Noting the absence of medical records between 1965 and 1969, the Administrative Law Judge could find no evidence of an impairment during that time resulting from anatomical, physiological or psychological abnormalities which were demonstrable by medically acceptable clinical and laboratory diagnostic techniques. Furthermore, the Administrative Law Judge noted that there was no proof in the medical evidence of the continuity of significant limitations of function during this period of time. The Administrative Law Judge found *inter alia* that:

> The claimant suffered an acute antero septal infarction in January of 1962 for which she was hospitalized and discharged asymptomatic; since that time she has suffered from hepatic cirrhosis of the liver, coronary arteriosclerotic heart disease, anemia and navel hernia, but the evidence of the limitations of function caused by such impairments, either singly or in combination, fails to establish that she was prevented from engaging in any substantial gainful activity, including her former occupations . . . for any continuous period beginning on or before September 30, 1967, which has lasted or can be expected to last at least twelve months.

Following that decision, plaintiff requested a review by the Appeals Council and submitted medical records from her physician covering the period 1961 through 1969 (37, 195–217). The Appeals Council approved the Administrative Law Judge's decision on November 12, 1974. Counsel for plaintiff requested the Appeals Council to reopen the hearing so that additional medical information could be submitted. This was done, and, on February 27, 1975, the Appeals Council concluded that the additional evidence did not warrant any change in its previous affirmance of the Administra-

tive Law Judge's decision, which thereby became the Secretary's final decision.

The question raised by the plaintiff is whether the finding by the Administrative Law Judge that the plaintiff was not "disabled" at or before September 30, 1967, the last date of her insured status, is supported by substantial evidence. The plaintiff's primary argument is that the Administrative Law Judge was not free to disregard the opinions of the plaintiff's two doctors that she was in fact "disabled" during this period of time in the absence of evidence by the Secretary contrary to those assertions.

### *Judicial Review of the Secretary's Finding*

The role of a court in reviewing the Secretary's findings of fact is a very narrow one. Section 205(g) of the Social Security Act provides that the "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). *Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972); *Laws v. Celebreeze,* 368 F.2d 640 (4th Cir. 1966). Although resolution of conflicts in the evidence is solely within the province of the Secretary as trier of the facts, *Thomas v. Celebreeze,* 331 F.2d 541, 543 (4th Cir. 1964); *see Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), this Court on review must make a "searching investigation" of the entire record to determine if substantial evidence for the Secretary's decision does exist. *Flack v. Cohen,* 413 F.2d 278, 280 (4th Cir. 1969). "Substantial evidence" has been defined as "more than a scintilla, but less than a preponderance", *Thomas v. Celebreeze, supra.* The Supreme Court has characterized it as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales, supra.*

### *"Disability" under the Act and Burden of Proof*

The term "disability" is defined in § 223 of the Social Security Act as an

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months * * *

42 U.S.C. § 423(d)(1)(A). Thus the test for disability involves two findings: (1) that there be a medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months; and (2) that the impairment renders the plaintiff unable to engage in any substantial gainful employment. *Harris v. Richardson*, 450 F.2d 1099 (4th Cir. 1971).

■ As to (1) above, Section 223(d)(3) of the Social Security Act states,

For purposes of this subsection, a 'physical or mental impairment' is an impairment that results from anatomical physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Social Security Administration Regulation No. 4, 20 C.F.R. 404. 1501(c) provides further that

statements of the applicant, including his own description of his impairment (symptoms) are, alone, insufficient to establish the presence of a physical or mental impairment.

The claimant, therefore, has the initial burden of proving such an impairment through objective evidence such as clinical and laboratory reports and tests. *Blalock v. Richardson, supra*, at 775.

As to (2) above, § 223(d)(2)(A) of the Act provides that

an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . . .

Once a claimant meets his burden of proof and demonstrates an inability to perform his or her usual occupation, the burden shifts to the Secretary to show that the claimant can perform a specific job in the national economy. *Taylor v. Weinberger*, 512 F.2d 664, 666 (4th Cir. 1975).

### Sufficiency of the Evidence

From the above discussion, it is apparent that the plaintiff's contention that the Secretary must demonstrate the ability of the plaintiff to perform a job existing in the national economy before concluding that the plaintiff is not disabled is erroneous. The burden to show that such a job exists and that the plaintiff is capable of performing it shifts to the Secretary only *after* the plaintiff has demonstrated a physical or mental impairment that could be expected to last for at least twelve months and an inability to perform her previous occupation. Thus the central question in this case is whether the plaintiff has made such a showing or, as the Secretary argues, has failed to do so.

Of critical importance in this case is the requirement that the plaintiff prove the existence of a physical or medical impairment—defined as an impairment demonstrable by clinical or laboratory techniques—at or prior to September 30, 1967, the last date of her insured status. Failing that, she cannot recover disability benefits.

Factors which distinguish this case from other social security appeal cases are the paucity of medical evidence—records, laboratory reports and tests, and the like—documenting the plaintiff's impairments prior to 1967, and the unanimity of opinion among the physicians examining her that she was "unable to work". *Cf. Williams v. Finch*, 440 F.2d 613 (5th Cir. 1971). Both of the plaintiff's personal physicians—Dr. Ehrmantraut (who treated her from 1956 until 1969) and Dr. Reisinger (who examined her prior to her retirement in his capaci-

ty as medical consultant for the telephone company and who was her personal physician after 1969)—stated that her condition was such that in their opinion, she was unable to hold a remunerative job (tr. 9; 178). The Secretary introduced no expert medical opinion to the contrary. Those doctors were the source of all of the medical records, save those of the hospitals, on which the Administrative Law Judge relied. The opinions of the treating doctors are important here, not only because of the weight that they should be given, but also because plaintiff stated several times in the course of the hearing before the Administrative Law Judge and on her application for benefits that she was unable to obtain work because her doctor advised against it and refused to sign necessary papers allowing her to work.

A regulation dealing with the expressed opinions of physicians concerning "disability" states:

> The function of deciding whether or not an individual is under a disability is the responsibility of the Secretary. A statement by a physician that an individual is, or is not, 'disabled,' 'permanently disabled', . . . 'unable to work,' or a statement of similar import, being a conclusion upon the ultimate issue to be decided by the Secretary, shall not be determinative of the question of whether or not an individual is under a disability. *The weight to be given such physician's statement depends on the extent to which it is supported by specific and complete clinical findings and is consistent with other evidence as to the severity and probable duration of the individual's impairment or impairments.* [emphasis added]

20 C.F.R. § 404.1526

In the instant case, the Secretary argues that neither of the opinions expressed by plaintiff's doctors is based on other specific clinical findings or, indeed, their own records.

In a letter written to plaintiff's counsel and later submitted to the Appeals Council, Dr. Ehrmantraut stated, "In view of Mrs. Heflin's history of acute myocardial infarction and cirrhosis of the liver, I feel she was physically unable to work." The Secretary argues in the motion for summary judgment that none of the medical evidence substantiates the doctor's opinion that the impairment of function caused by the residuals of her heart attack prevented her from engaging in her previous occupation.

█ The record before the Court indicates the following evidence concerning the plaintiff's heart condition. In January of 1961, while plaintiff was employed as an administrative assistant at the C & P Telephone Company, she was admitted to Suburban Hospital complaining of chest pains and headaches. The medical reports indicated high blood pressure, hypertension and sinus tachycardia (Tr. 177–180). In his notes of her office visits, Dr. Ehrmantraut noted in March and April of 1961, that plaintiff complained of chest pains, weakness on exertion, and periods of dizziness (Tr. 207). At this time, in addition to clerical duties, her work consisted of taking shorthand, typing and other work of a secretarial nature. In April, Dr. Reisinger, as consultant doctor to the C & P Telephone Company, recommended that plaintiff work only part time while her own doctor attempted therapy to lower her blood pressure and treat her hypertension. She worked part-time for four months, and then stopped work completely for three months. She returned to part-time work in November of 1961, after her blood pressure had been brought under control, and gradually returned to working a full day. (Tr. 177) On January 17, 1962, plaintiff was readmitted to the hospital with a diagnosis of acute myocardial infarction. She was placed on the usual coronary regimen and was discharged on February 4, 1962, to finish her convalescence at home (Tr. 108). Dr. Reisinger and Dr. Ehrmantraut conferred and approved her for part-time work, and she returned to work on April 10, 1962, but on April 27, 1962, after experiencing chest pains, she did not return to work (Tr. 55–56). In

May and in August of 1962, plaintiff was admitted again to the hospital for non-heart related difficulties.

On October 18, 1962, Dr. Reisinger recommended that she be retired from the company in view of her "myocardial infarction, tachycardia, hypertension and general lack of reserve". (Tr. 177) The company approved a disability pension "because of disability for any type of work this company would be able to offer her." (Tr. 177).

In February, April and May of 1963, plaintiff was again admitted to the hospital following episodes of syncope; the medical records indicated arteriosclerotic heart disease (Tr. 185), reaction to drugs or alcohol (Tr. 186, 187), or coronary insufficiency as probable causes of the episodes.

With the exception of these admissions to the hospital in 1963 following episodes of fainting, the cause of which was uncertain, there is very little medical evidence in the record which would suggest that the plaintiff's arteriosclerotic heart disease or the residual effects of her heart attack rendered her unable to engage in light, sedentary work, such as that in which she had previously been engaged. To the contrary, the record indicates if anything an improvement of her heart condition since 1961. The plaintiff claims that her shortness of breath and her chest pains—both from her heart condition—are her major impediments to work (Tr. 71). But plaintiff testified that from 1961 until 1965, she would experience chest pain only for about five minutes every other month, and that nitroglycerine would immediately relieve the pain (Tr. 59–60). Since 1965, her chest pains occur only once or twice a year and are less painful (although lasting as long as twenty-five minutes). Again, she testified that nitroglycerine relieved the pain (Tr. 61). As to her shortness of breath, the medical evidence shows that she cannot lift objects or climb even a short flight of stairs without becoming short of breath. But such a condition does not render the plaintiff unable to do secretarial work

where there is no need to lift objects or climb stairs. Dr. Ehrmantraut's notes of her office visits during 1963 and 1964 indicate that her heart and lungs were in satisfactory condition and that she was making a fairly normal recovery from her heart attack (Tr. 207–209). Her other restrictions are minimal. She testified that sitting causes swelling in her feet and legs, but that this discomfort can be alleviated by short walks. Of interest is the plaintiff's own statement that she felt that she could have returned to work after her heart condition improved, but her doctor felt otherwise (Tr. 65).

The medical evidence also does not suggest that the plaintiff was significantly affected by cirrhosis prior to the termination of her insured status in September 1967. In May of 1962, plaintiff was admitted to the hospital with megoblastic anemia, which was diagnosed as being a consequence of cirrhosis of the liver, which was in turn being caused by plaintiff's excessive use of alcohol (Tr. 193, 209). The anemia, however, was cleared up by 1965 through vitamin therapy. A report dated November, 1969 states that the plaintiff's liver had been enlarged for several years, but that she had not previously exhibited any portal hypertension or liver failure (Tr. 122). Liver function tests performed in September, 1969 were described as normal (Tr. 120). Plaintiff claims that her activities are now restricted as a consequence of cirrhosis but the problem remains that there is no medical evidence in the record which would demonstrate that plaintiff's activities were significantly restricted at or prior to the last date of her insured status in 1967.

The record also contains no medical evidence showing impairments of plaintiff's functioning in 1967 from anemia or hernia. Plaintiff testified at the hearing that the anemia had been brought under control in 1965 and no longer bothered her or required medication (Tr. 63–64). With respect to plaintiff's hernia, the record contains a medical report dated in February of 1964 which indicates the

presence of a "3 centimeter sliding, reducible hiatal hernia" (Tr. 28). The hernia was described as the cause of plaintiff's admission ·to the hospital in February and in December of 1964 following vomiting and dehydration (Tr. 190), and plaintiff testified at the hearing that the hernia presently causes her occasional pain which is only relieved by resting (Tr. 65). Again, the record is devoid of medical evidence which would indicate the hernia in any way restricted the plaintiff's activities prior to 1967 to render her incapable of obtaining substantial gainful employment. Furthermore, a hernia has been held to be a remediable condition so as not to constitute a disability under the Act. *Richardson v. Secretary*, 371 F.2d 542 (7th Cir. 1966).

The plaintiff has simply failed to prove that on or prior to September 30, 1967, she suffered from an "impairment" as defined by statute to mean an impairment demonstrable by diagnostic techniques. No laboratory tests or clinical reports have been submitted in connection with the claimed impairment that would indicate significant limitations on the plaintiff's functions for a period of at least twelve months prior to September, 1967. The only "medical evidence" suggesting such long-term impairment are the opinions of Dr. Ehrmantraut and Dr. Reisinger that the plaintiff "was unable to work". But a physician's determination that a patient should not return to her previous job is not the equivalent of the Secretary's determination that a person is "disabled" for the purposes of social security disability benefits. Nor does the fact that the C & P Telephone Company approved her for a disability pension on the basis of her inability to do any job which that company might offer her bind the Secretary to find the plaintiff disabled for Social Security purposes. *Moon v. Celebreeze*, 340 F.2d 926 (7th Cir. 1965). The Secretary must take into consideration factors which a private physician advising a patient or a company would not weigh. One of those factors is the standard of disability as defined by Congress. While at first blush it may seem inequitable for some persons to be considered disabled by their doctors but not by Congress, it is clear that the Secretary must hew to Congress' definition or risk rendering inequitable determinations caused by reliance on the differing personal or subjective standards of individual physicians.

In the present case, the only relevant medical event prior to 1967 properly documented, as required by the statute, is the plaintiff's heart attack. But the records also indicate only a moderate restriction on activity, minimal recurring pain which can be relieved by drugs, and gradual improvement of those conditions. The plaintiff was given a number of opportunities to supplement the record. The Administrative Law Judge's decision that the evidence did not demonstrate the existence of a disability prior to September 30, 1967, is amply supported from the record and from inferences which may properly be drawn from the absence of medical evidence in the record. Accordingly, the Court is of the view that there was substantial evidence for the Secretary's findings that the plaintiff's impairments, either singly or in combination, failed to demonstrate that plaintiff was under a "disability" as defined by the Act at or prior to her last date of insured status. Consequently, the Court will enter an order granting summary judgment for the defendant.