Richard SABULSKY

v.

Richard S. SCHWEIKER, Secretary of
Health and Human Services.

Civ. A. No. 82–5524.

United States District Court,
E.D. Pennsylvania.

Aug. 19, 1983.

Thomas K. Noonan, Mahanoy City, Pa.,
for plaintiff.

Stanley Weinberg, Asst. U.S. Atty., Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

The issue here is whether there is substantial evidence to support the findings of the Secretary. 42 U.S.C. § 405(g). "Substantial evidence" has been defined as "more than a mere scintilla". It means such relevant evidence as a "reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). As was stated in *Smith v. Califano,* 637 F.2d 968 (3d Cir.1981):

Despite the deference to administrative decisions implied by this standard, appellate courts retain a responsibility to scrutinize the entire record and to reverse or remand if the Secretary's decision is not supported by substantial evidence. *Baerga v. Richardson,* 500 F.2d 309 (3d Cir. 1974), *cert. den.* 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975); *Williams v. Finch,* 440 F.2d 613 (5th Cir.1971); *Thomas v. Celebrezze,* 331 F.2d 541 (4th Cir. 1964). (See page 970).

We here conclude that the Secretary's decision was not supported by substantial evidence. A review of the entire record unequivocally discloses that the Administrative Law Judge (ALJ) failed to consider the medical testimony of record and the plaintiff's testimony. This is demonstrated by references to the record.

Dr. Karlavage testified that plaintiff suffers from intrinsic and extrinsic asthma, bronchitis, complicated by pneumonia on at least one occasion, and gouty arthritis with hypertension. (TR 33A) During the course of his treatment of the plaintiff the doctor observed a constant "deterioration" in his condition. (TR 34A) His condition is "literally [an] hereditary defect in his lungs" and he is constantly "prone to severe and chronic bronchial constriction". (TR 35A) His condition is such that it is not subject to any "significant improvement in the foreseeable future". (TR 35A). Although the ALJ has concluded that the plaintiff can perform the duties of a draftsman, Dr. Karlavage, discussing this very issue, testified as follows:

"A. Well, quite frankly, I would have hoped that he could do the work of a draftsman, but as he confessed to me, he did work as a draftsman and because of his chronic attacks of asthma, his difficulty even at speaking at times, his use of significant amount of medications, his hospitalizations, he was not able to maintain that really idealized job of draftsman.

Q. Can you imagine any other type of employment that he could be able to perform?

A. If he can't be a draftsman, he literally cannot push a pencil. His, you know, too sick. I mean, he has the most ideal job for a chronic asphma patient and he unfortunately has been forced to live a life of poverty because his ill health does, he couldn't keep that job."

(TR 36).

The asthmatic condition which significantly is of both intrinsic and extrinsic origin is not faked. On the contrary, the plaintiff is a "reliable patient". (TR 36A) There are times when the plaintiff seeks medical care, but because of his asthmatic condition, he literally "cannot speak" upon reaching the doctor's office. (TR 37). He is labeled, unfortunately for him, as a "medical disaster". (TR 37) He has been repeatedly seen by various doctors and, as stated by Dr. Karlavage, his condition is "both frustrating and difficult" to any physician because of the progress of the condition and its origin at an early age. (TR 37A).

Upon cross-examination by the ALJ the plaintiff explained his inability to retain any employment by reason of his condition at the early age of seven years. He stated, for instance, that he was unable to retain any job because of missing time due to illness and for that very reason was classified 4F for military service purposes. (TR 30). Although the ALJ made a valiant effort to establish that the condition is the result of smoking, the record clearly establishes that the plaintiff has never smoked. His condition is radically affected by weather conditions, particularly when the weather is foggy and damp. (TR 39A). He can walk approximately a block when he is unable to get his breath and is obliged to use his inhalator. (TR 39A). He is unable to sleep except on two or three pillows, cannot lie on his back and upon rising in the morning is obliged to take several kinds of medication which immediately have an effect upon his mobility. (TR 40). He at times wakes up sick in the morning, taking one to two hours to "clear the lungs out". (TR 40). Coughing is, of course, a part of his life and sometimes induces vomiting. (TR 40A). He goes to no clubs, no churches, does no fishing or hunting and on limited occasions when he has gone to a drive-in theater with his wife and children, has been obliged to leave early. (TR 40, 41). For the same reason he goes to no athletic events even though the same may involve his children. (TR 41A). Certain shots which he had at one time received have been discontinued because he could not afford the cost thereof. (TR 41B). His asthmatic condition is, of course, complicated by the gout which when it occurs lasts three or four days. (TR 42). He wheezes constantly, sometimes is unable for that reason to go to the bathroom and on those occasions uses a bedpan. (TR 42). He can sit basically in only one position, has, on occasions, sought work without success for obvious reasons. Although qualified as a draftsman, he has no tools in his home with which to perform such work even if there were an employer who had available assignments which he could perform in the home. (TR 45). The gout alone would restrict him from working for at least a week every two or three months. (TR 45).

For all of these reasons he specifically testified he does not believe he could return to work notwithstanding his attempts in the past to obtain some type of employment. (TR 46). This is substantially the result of the fact that he cannot breathe and is constantly in a state, as he describes it, "as someone who just ran around the block three times and was out of breath". (TR 46). Obviously, as a draftsman he would have to work eight hours per day, work in different positions and work without the loss of time imposed upon him by reason of his need for medication in the morning, several hours of resulting disability, and the loss of time resulting from gout which recurs every two or three months for three or four days at a time. (TR 47). His condition has worsened in that the attacks are becoming more severe, resulting in the consumption of more medication with the

resultant effect that he "feels sickly all the time" by reason of his consumption of "pills and his constant use of an inhalant. (TR 48). Plaintiff explained that these conditions caused him repeated loss of time when previously employed and resulted in hospitalization for four years in a row. (TR 50).

The plaintiff's testimony and that of Dr. Karlavage do not in any wise support the decision reached by the ALJ. Neither does the report of Dr. Dittman support the decision. As early as 1981, Dr. Dittman, after referring to the plaintiff's asthmatic condition, his dyspnea on exertion, his wheezing and coughing, his hyperaeration, concluded "it would seem at the present time that the patient would be physically impaired because of his asthmatic problems". Despite being on a fair program of medication he still has chronic wheezing and has evidence of bronchospasm". (TR 135).

Thus, we find nothing in the record to support the decision and conclusion reached by the ALJ other than his reference to the fact that the plaintiff is not constantly and repeatedly hospitalized and treated by various doctors. However, this is explained by the fact that the plaintiff, seen by various and multiple physicians, has received the same results in each instance and has now found that the medicines prescribed are the best that can be administered and, therefore, does not choose to seek constant and repeated hospitalization and medical examinations because, as he says, he "cannot afford" such repeated treatment and concludes "they would have him doing just what he is doing now—taking his medication". (Exhibit 31).

Neither do the conclusions of Dr. Platt support the findings and conclusions of the ALJ. Having examined the plaintiff, he concluded "He is known to have asthma since childhood. It has now reached a state where he is constantly wheezing and apparently is refractory to all medications. His prognosis on long term survival is poor". (TR 118). Notwithstanding Dr. Platt's dire prediction that "long term survival is poor", the Secretary would have this man return to some type of work which could do nothing other than aggravate his condition.

Although, as the record will show, we not infrequently grant the defendant's motion for summary judgment, we are here compelled to the reverse conclusion. In *Smith v. Califano, supra,* the court stated:

The ALJ's conclusion that claimant did not have a statutory disability is, as a matter of law, just too speculative to be sustainable. The ALJ seems to have relied heavily on the fact that claimant had testified that "he had full use of his hands, arms and legs, does shopping and last fall went hunting twice". Appl. at 124. Yet, statutory disability does not mean that a claimant must be a quadriplegic or an amputee. Similarly, shopping for the necessities of life is not a negation of disability and even two sporadic occurrences such as hunting might indicate merely that the claimant was partially functional on two days. Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity. Smith's activities are miniscule when compared to a plethora of cases which have held that there was total disability even when the claimant was far more active than Smith.... (*See* page 971)

Plaintiff's "activities" are far less than those described in *Smith.*

Because the ALJ has failed to give proper consideration to the plaintiff's subjective complaints, to the medical testimony offered by him and the opinions there expressed, has given inadequate consideration to his limited physical activities and capabilities, we have no choice but to grant the motion for summary judgment filed by the plaintiff and deny the cross-motion for summary judgment filed by the defendant. *See Smith v. Califano, supra.* No purpose would be served by remanding the record and, accordingly, the plaintiff's motion to remand will be denied.