**Dock WILLIAMS, Plaintiff-Appellant,**

v.

**Robert FINCH, Secretary of Health, Education and Welfare, Defendant-Appellee.**

**No. 29800.**

United States Court of Appeals, Fifth Circuit.

March 17, 1971.

David W. Palmer, Crestview, Fla., for plaintiff-appellant.

William Stafford, U. S. Atty., C. W. Eggart, Jr., Asst. U. S. Atty., Pensacola, Fla., for defendant-appellee.

Before GEWIN, COLEMAN and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

This is that somewhat unusual case in which after a careful scrutiny of the record we cannot find substantial evidence to support the decision of the Secretary of Health, Education and Welfare, despite the stringent requirements of proof of disability under the amended Social Security Act and the narrowly circumscribed function of the Court in reviewing decisions of the Secretary. The Secretary determined that Dock Williams, appellant, was not entitled to a period of disability or disability insurance benefits under the Act. See Sections 216(i), 223 of the Act, 42 U.S.C. §§ 416(i), 423, as amended (1969). The District Court, by summary judgment, upheld the Secretary's findings, and claimant appeals therefrom.

Claimant, a 55-year-old male, filed an application for a period of disability and for disability insurance benefits on July 7, 1967, alleging the onset date as October 30, 1961. He listed his impairments as high blood pressure, ulcers of the stomach, brain tumor, blackouts, numbness of hands, arms and legs extending into his body, and sleepless nights. This was the third of such applications, the two prior applications having been filed in February 1962 and September 1965.[1] A hearing was held at which claimant and his wife testified. All evidence contained in the two prior determinations was considered by the hearing examiner in denying claimant's latest application. He found that appellant was not under a disability beginning on or before December 31, 1966, when he last met the earnings requirements of the Act. It was the opinion of the hearing examiner that "claimant had failed to lift his burden of proving himself disabled," which decision ultimately became that of the Secretary. We do not agree and fail to find the requisite substantial evidence to support the decision of the Secretary.

Appellant was born in 1915 and has the equivalent of a fourth-grade education. He lives with his wife, mother and adopted son, with whom he shares a monthly income of $177.58, including Veterans Administration disability benefits and welfare payments. Claimant served approximately a year in the Army in 1942 and was honorably discharged therefrom. At various times during his life he has worked as a carpenter's helper, construction laborer, handyman, nursery worker, pastry cook, pie baker, plumber's helper, service station attendant, yardman, and washing machine tumbler or operator. Claimant's alleged disability started on October 30, 1961, when he suffered a vomiting and fainting attack while digging a ditch at Eglin Air Force Base. He was taken to a hospital at Crestview, Florida, and attended by Dr. M. G. Carroll, whose initial diagnosis was respiratory infection, questionable heart disease and nervousness. Since that time he has been intermittently hospitalized on numerous occasions at Veterans Administration hospitals. After the October 1961 incident, claimant returned to work as plumber's helper but allegedly was unable to continue because the work was too strenuous. Since that time he has done a little yard work, for which he received $7 or $8 a month, and has worked at a service station pumping gasoline for which he had earned $48 when his job was terminated. He has sought reemployment there, at other filling stations, and with his former employer at a trucking company. At the last hearing claimant testified that he can drive and does drive as far as three blocks to the grocery but seldom farther. Highway driving numbs his legs and arms, brings on spells and blackouts, and even driving to the grocery sometimes necessitates pulling off the road. He spends most of his time sitting around the house or visiting with neighbors immediately across the street or nearby; he cannot walk very much and no longer does housework.

1. In the first application Williams listed his impairments as a heart condition; in the second he listed high blood pressure, diabetes and a heart condition.

Claimant ascribes his inability to work to numbness, constant nausea, high blood pressure, pain in his left chest and "head-swimming." His numbness has worsened since 1961, and his nausea causes severe headaches and staggering. In September 1962 he was declared by the Veterans Administration to be totally and permanently disabled, and since that time has been receiving disability benefits from that agency. On January 3, 1963, the Department of Health, Education and Welfare refused claimant vocational rehabilitation, showing as its reason "Impairment too severe." The nature of disability was listed as: "1. Benign essential hypertension. 2. Possible hypertensive heart disease. 3. Carpal tunnel syndrome." Four months later the Department of H.E.W. denied claimant's first application for disability benefits. The two subsequent applications were likewise denied.

In disagreeing with the Secretary's finding that claimant has failed in his burden of proof, we are cognizant of the fact that the burden is indeed a heavy one under the Act. See Brown v. Finch, 5 Cir., 1970, 429 F.2d 80, 83. Disabling impairments must be of lengthy and indefinite duration.[2] Moreover, under the Act as amended, the requirement that an applicant show that he cannot engage in "substantial gainful work which exists in the national economy, regardless of whether * * * he would be hired if he applied for work"[3] is so stringent that it borders on being unrealistic. See Cooper v. Finch, 5 Cir., 1970, 433 F.2d 315, 316. We are also aware that we may neither reweigh the evidence nor substitute our judgment for that of the Secretary. Our role, as we have so often said, is strictly limited

to a determination of whether there is substantial evidence in the record to support the Secretary's decision. See, e. g., Richardson v. Richardson, 5 Cir., 1970, 437 F.2d 109; Cooper v. Finch, 5 Cir., 1970, 433 F.2d 315; Brown v. Finch, 5 Cir., 1970, 429 F.2d 80; Cross v. Finch, 5 Cir., 1970, 427 F.2d 406; Long v. Finch, 5 Cir., 1970, 427 F.2d 713; Knox v. Finch, 5 Cir., 1970, 427 F.2d 919; Burdett v. Finch, 5 Cir., 1970, 425 F.2d 687; Breaux v. Finch, 5 Cir., 1970, 421 F.2d 687; Gray v. Secretary of Health, Education and Welfare, 5 Cir., 1970, 421 F.2d 638; Martin v. Finch, 5 Cir., 1969, 415 F.2d 793; Rome v. Finch, 5 Cir., 1969, 409 F.2d 1329. As a consequence of our circumscribed function and the strict standards for proof of disability exacted by the amended Act, the number of judicial opinions approving these administrative decisions which deny disability benefits is overwhelming. Conversely, reversals are very rare. This is not to say, however, that we have abdicated our traditional judicial function of scrutinizing the record as a whole to determine the reasonableness of the decision reached. Nor is it to say that there can never be a case requiring reversal because of the usual finality accorded such decisions and the narrow scope of judicial review. See, e. g., N.L.R.B. v. Ortronix, Inc., 5 Cir., 1967, 380 F.2d 737. This, in our opinion, is such a case.

An analysis of the medical evidence shows that claimant has shouldered his burden of proof. Four doctors expressed opinions of claimant's disability in varying degrees, all of whom attributed disability to hypertension or heart disease, or both.[4] The salient feature of this case, which sets it apart from the

2. Section 223(d) of the Act, 42 U.S.C. § 423(d), provides in pertinent part: "(1) The term 'disability' means— (A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. * * *"

3. 42 U.S.C. § 423(d) (2) (A).

4. Dr. M. G. Carroll, surgeon, who has treated and observed claimant on numerous occasions, reported on March 30, 1962, "It is my opinion that this person

usual Social Security disability case, is that there is no statement of record by any medical expert that claimant is *not physically disabled*.[5] Further indicative of claimant's disability is the fact that the Social Security Administration itself, through its Division of Disability Operations, has rejected claimant for vocational rehabilitation because of the severity of his disabling impairment. This accords with the Veterans Administration appraisal of claimant in finding him "unable to follow a substantially gainful occupation" and concluding "therefore his percentage of disability is total." While we are fully aware that another agency's conclusion is not deter-

minative of the issue of disability under the Social Security Act, Hicks v. Gardner, 4 Cir., 1968, 393 F.2d 299, 302; Hayes v. Celebrezze, 5 Cir., 1963, 311 F. 2d 648, 654, such a conclusion is a strong straw in the wind in view of the independent and positive findings of physical disability and the complete absence of statements to the contrary.

■ Appellee stresses that claimant has been described consistently as a person in excellent physical condition. A study of the record shows that claimant undoubtedly presents the outward appearance of a healthy, well-developed and well-nourished individual.[6] Physical

does have 1. Hypertension 2. Heart Disease (apparently arteriosclerotic) with angina symptoms. He should perform only light duty." On February 5, 1969, Dr. Carroll further reported, "Diagnosis: 1. Hypertension, Essential. 2. Nervous Disorder. It would appear that Mr. Williams is disabled with reference to gainful work."

Dr. F. T. Daly, a medical consultant for the Social Security Administration, reported on March 7, 1968: "A review of the record reveals that the applicant suffers from a significant impairment and may well be disabled at the present time * * *. He has severe paroxysmal hypertension, as revealed by readings of 180/100, 174/130 and 194/126 * * *. From the evidence available, we have to conclude that he has definite heart disease."

Dr. R. C. Palmer, specialist in Internal Medicine, reported on May 14, 1962, "It is my impression that this patient is partially disabled on the basis of hypertensive vascular disease and probable mild anginal failure."

Dr. H. C. White (General Medicine) reported on May 23, 1969: "In my opinion, patient at this time is unable to work for the following reasons: (1) Physical condition as previously listed, primarily #1 [Hypertensive and arteriosclerotic cardiovascular heart disease with myocardial ischemia] and #3 [Peripheral vascular disease, organic, of lower extremities due to arteriosclerosis] markedly limits any physical activity. (2) Patient has no educational background to permit him working in any other capacity than plumber or laborer, both of which require strenuous activity. I have seen Mr. Williams on only two occasions. On both of these

occasions he has demonstrated a very definite hypertension."

5. If appellant's claim were based on a mental impairment, we would have no difficulty affirming the Secretary.

Dr. H. T. Dukes, neurosurgeon, reported on November 14, 1967: "I cannot find any clear-cut evidence on any specific abnormality on my examination of today. I would feel that on the basis of his previous neurological abnormality carried to the extent of pneumoencephalograms, his essentially normal neurological examination today, and his normal electroencephalogram today that no further neurological study is indicated at the present time. I find no evidence of neurological abnormality which would warrant this man's being incapable of employment * * *." Dr. P. B. Phillips, psychiatrist-neurologist, found no disabling mental impairment. However, he reported on April 12, 1963, that it was his impression that claimant was "probably too hypertensive for hard work and too poorly educated for sedentary types of work" although "not psychiatrically disabled in the sense of being either psychotic or seriously handicapped by neurosis."

Dr. M. C. Wilhoit, psychiatrist-neurologist, submitted an electro-encephalogram report on November 13, 1967. It was his impression that "Cerebral electro activity [was] within normal limits."

6. Dr. A. L. Prevatt, specialist, Internal Medicine, found claimant to be exceptionally well developed, well nourished and muscular. On three separate occasions he commented that the patient "appears to be in superb health", "appears to be in excellent health", "appears to be in excellent

appearance, however, is not the standard used for disability determinations. Under 42 U.S.C. § 423(d) (3), the criteria for disabling impairments is stated to be "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." The record amply supports a conclusion of disability based on these standards.

The Supreme Court and this Court have construed "substantial evidence" to be

"'[M]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' Consolidated Edison Co. of New York v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)."

Cohen v. Perales, 5 Cir., 1969, 412 F.2d 44, 53.

Applying these principles to the instant case—and with due deference to the expertise of the Secretary and hearing examiner who has conducted two hearings in this matter—we find that the record is without substantial evidence to support the decision of the Secretary. We remand this case to the District Court so that it may issue an appropriate order directing the Secretary to grant appellant the disability benefits to which he is entitled, in accordance with this opinion.

Reversed and remanded.

physical condition." However, on each of these occasions, Dr. Prevatt's diagnosis showed hypertension and heart disease. In his latest report, Dr. Prevatt remarked, "Each time I have examined him he has exhibited severe diastolic hypertension." Dr. Prevatt, however, made no specific recommendation relative to whether or not claimant was disabled for work. Dr. W. L. Langhorne, specialist, Internal Medicine and Cardiovascular Disease, also commented on claimant's healthy appearance. On physical examination he found him to be well developed, well nourished and muscular. Dr. Langhorne observed that the patient, "appears to be in excellent physical condition. He is alert, cooperative and does not appear either acutely or chronically ill. * * * Opinion: Moderate hypertension * * * On the basis of the information that I have today I can not make a definite diagnosis of organic heart disease. * * * He does have moderate hypertension which will require medical therapy." Dr. Langhorne likewise made no definite recommendation as to whether or not claimant was disabled in regard to employment. Although Dr. Langhorne's findings may reasonably be said to negate disability, his examination was limited to one occasion in October 1967. Under the circumstances of this case, we cannot say that his opinion could furnish the basis for substantial evidence to deny disability benefits.