[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13817
_____

D.C. Docket No. 8:17-cv-01452-TGW

JACKIE NOBLE,

Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant - Appellee.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(June 30, 2020)

Before JILL PRYOR, GRANT, Circuit Judges, and ROYAL,* District Judge.

JILL PRYOR, Circuit Judge:

Jackie Noble appeals the district court's judgment affirming the decision of

_____

\* Honorable C. Ashley Royal, United States District Judge for the Middle District of
Georgia, sitting by designation.

the Commissioner of the Social Security Administration ("Commissioner") to deny his application for disability benefits.  On appeal, Noble argues that the administrative law judge ("ALJ") who heard his case erred in finding that he was not disabled because the ALJ failed to consider appropriately the Department of Veterans Affairs' ("VA") determination that Noble was unable to work due to a disability and thus entitled to veterans' benefits.  The ALJ's decision shows that he considered the VA's determination, however.  And substantial evidence, including medical records that postdate the VA's decision, supported the ALJ's rejection of the VA's disability decision as determinative of whether Noble was disabled for Social Security purposes.  We therefore cannot say that the ALJ erred in denying Noble's claim for benefits.  We affirm.

## I.     FACTUAL BACKGROUND

While serving in the Navy in the 1990s, Noble fell off a ladder and fractured a vertebra.  After the injury, he struggled with back pain but was able to continue working.  He served in the Navy for several more years before receiving an honorable discharge.

Years later, Noble reinjured his back while working at a car dealership.  After the incident, he was unable to go back to work due to pain in his back and knees as well as depression and anxiety.  Because his medical conditions were related to the back injury he had sustained while serving in the Navy, he applied

for disability benefits from the VA.  The VA determined that he was disabled and awarded him disability benefits.

Noble also filed three separate applications for disability benefits under the Social Security Act.  Although each application covered a different time period,[1] he claimed in each application that he had been disabled since he reinjured his back at the car dealership.  Each application was denied on the ground that Noble was not disabled under the five-step sequential evaluation process that applies to Social Security claims.[2]  In this appeal, Noble seeks review of the Commissioner's denial of his third application.  Because he argues that the ALJ failed to give proper weight to the VA's determination that he was disabled, we recount the

---

[1] Noble's first application for Social Security benefits covered the time period from when he reinjured his back through the date his first application was denied.  Several months after the first adverse decision, he submitted a second application for benefits.  This application covered the time period beginning the day after the ALJ's first decision through the date his second application was denied.  After the ALJ denied his second application, he filed the third application, which sought benefits for the time period from the date after the denial of his second application through the date when his disability insured status expired.

[2] Under this five-step process, to evaluate a claim for disability benefits, an ALJ asks:

(1) Did the claimant perform any substantial gainful activity during the relevant time period?

(2) Does the claimant have a severe impairment?

(3) Does the claimant have a severe impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I?;

(4) Given her residual functional capacity, is the claimant able to perform her past relevant work?

(5) Based on her age, education, work experience, and residual functional capacity, is the claimant able to perform other work of the sort found in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4).

3

history of his VA claim as well as his third application for benefits with the Social Security Administration.

## A.    Noble's Application to the VA for Benefits

Shortly after he was reinjured, Noble filed a claim for disability benefits with the VA. Under the relevant statute, Noble was entitled to disability benefits from the VA if it determined that he was disabled due to a personal injury he suffered while serving in the Navy. *See* 38 U.S.C. § 1131 (providing that a veteran who is disabled as a result of a personal injury suffered while serving in active military, naval, or air service is entitled to compensation).

After reviewing his application, the VA issued a written decision determining that Noble was entitled to benefits. The agency rated Noble at 80% disabled. This rating was based on the combined effect of several disabilities, all of which were service-connected,[3] including:  a low back condition that was evaluated at 40% disabling; depression that was evaluated at 30% disabling; mild L5 radiculopathy in the right and lower extremities, each evaluated at 10% disabling; patellofemoral syndrome in the right and left knees, each evaluated at 10% disabling; degenerative changes in the right and left knees, each evaluated at

---

[3] An injury or disease is service-connected when the "particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces." 38 C.F.R. § 3.303(a). Noble's disabling medical conditions qualified as service-connected because they arose from injuries he initially sustained when he fell off a ladder while serving in the Navy.

10% disabling; and tinnitus that was evaluated at 10% disabling.[4]

In considering the degree of disability associated with Noble's L5 radiculopathy,[5] the VA had to resolve conflicting evidence about whether he continued to experience the condition. When examined by a VA medical provider, Noble reported that he continued to experience chronic back pain that radiated down each leg and resulted in a burning sensation and numbness in each foot. But medical evidence in the record before the VA suggested that Noble was no longer experiencing radiculopathy. An electromyogram ("EMG")[6] performed shortly after Noble reinjured his back showed electromagnetic findings consistent with mild radiculopathy, but an EMG performed a year later "did not find any electrodiagnostic evidence of acute radiculopathy." Doc. 15-8 at 87.[7] Applying

---

[4] When a veteran has multiple service-connected disabilities, the VA does not determine the individual's disability rating by adding up the percentage of each disability. The regulations instead instruct the agency to combine the individual ratings as directed by the "combined ratings table." *See* 38 C.F.R. § 4.25 (explaining how the combined rating table is used to calculate a veteran's disability rating when he has multiple disabling conditions).

[5] "Radiculopathy," commonly referred to as a pinched nerve, is defined as "irritation of or injury to a nerve root (as from being compressed) that typically causes pain, numbness, or weakness in the part of the body which is supplied with nerves from that root." Radiculopathy, Merriam-Webster Dictionary, http://www.merriam-webster.com/dictionary/radiculopathy (last accessed June 29, 2020).

[6] An EMG "is a diagnostic procedure to assess the health of muscles and the nerve cells that control them (motor neurons). EMG results can reveal nerve dysfunction, muscle dysfunction or problems with nerve-to-muscle signal transmission." Mayo Clinic, Electromyography (EMG), available at https://www.mayoclinic.org/tests-procedures/emg/about/pac-20393913 (last accessed June 29, 2020).

[7] Citations in the form "Doc. #" refer to the numbered entries on the district court's docket.

the relevant legal standard, the VA resolved this conflict in the evidence about whether Noble continued to experience radiculopathy in his lower extremities in Noble's favor. *See* 38 U.S.C. § 5107(b) ("When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant.").

After rating Noble's service-connected disability at 80%, the VA considered whether Noble was able to work. Relying on the report of a VA examiner, the ALJ concluded that Noble's back pain was severe enough to prevent him from performing even sedentary work. Because Noble was unable to "obtain or maintain gainful employment" due to his "service[-]connected low back disability and related complications," the VA rated him totally disabled and awarded him "Individual Unemployability" benefits at a rate of 100%. Doc. 15-8 at 88, 91; *see* 38 C.F.R. § 4.16(b) (stating policy that "all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled").

## B.   Noble's Current Application for Disability Benefits with the Social Security Administration

Several years after the VA's decision, Noble submitted the Social Security benefits application at issue in this case. In his application, Noble claimed that he had been unable to work since May 2007 (when he reinjured his back) due to several illnesses or injuries, including knee pain, degenerative disc disease, a

pinched nerve in his back, and depression.  Although he had tried numerous treatments for his back and knee pain, including physical therapy, medication, injections, and using a TENS unit, he claimed that none of these treatments had worked.  He further explained that medical providers had prescribed medications to treat his depression but he received no relief from these medications.

Noble, proceeding *pro se*, requested and received a hearing on his application before an ALJ.[8]  At the hearing, he urged the ALJ to find that he was unable to perform any work because the VA had found that he was unemployable due to his back pain.  In response, the ALJ explained that he would consider the VA's impairment determination but warned that the VA system is "different than ours," and so he would "see how your facts apply to our rules, which might and has in the past resulted in different outcomes."  Doc. 15-3 at 42.  The ALJ further cautioned, "I can't tell you that because the VA has come to a conclusion that we will come to the same conclusion."  *Id.*  Noble acknowledged that he knew the Social Security "system is different than the VA's."  *Id.* at 43.

In a written decision, the ALJ, using the five-step sequential disability

---

[8] The ALJ actually held two hearings.  The first hearing was adjourned to further develop the record.  After the first hearing, additional medical records from the VA, including examinations conducted for Noble's VA disability claim and reports from independent medical examinations, were added to the record.  After collecting these additional records and giving Noble an opportunity to supplement the record, the ALJ convened the second hearing, which we discuss here.

evaluation process, determined that Noble was not disabled during the period covered by his application. At the first step, the ALJ found that Noble had engaged in no substantial gainful activity during the relevant time period. At the second step, the ALJ concluded that Noble had severe impairments. Turning to the third step, the ALJ found that Noble had no impairment or combination of impairments that met or medically equaled the severity of a listed impairment.

At the fourth step, the ALJ assessed Noble's residual functional capacity, finding that he could perform sedentary work subject to various limitations. The ALJ explained that the diagnostic imaging performed on Noble's spine since his reinjury had "consistently demonstrated only mild abnormalities." Doc. 15-2 at 22. The diagnostic imaging on which the ALJ relied included an MRI[9] taken shortly after the reinjury that showed no significant degenerative disc disease, as well as an EMG conducted a year after the reinjury that showed no evidence of radiculopathy. The ALJ also discussed more recent x-rays that showed Noble had mild degenerative joint disease, no significant disc space narrowing in his back, and only mild degenerative joint disease in each knee.

The ALJ then considered the physical examinations of Noble conducted

---

[9] "MRI" refers to "a medical imaging technique that uses a magnetic field and computer-generated radio waves to create detailed images of the organs and tissues" in a patient's body. Mayo Clinic, MRI, available at https://www.mayoclinic.org/tests-procedures/mri/about/pac-20384768 (last accessed June 29, 2020). An MRI can be used to evaluate whether a patient has a disc abnormality in her spine. *Id.*

8

during the time period covered by the disability application.  The ALJ explained

there was no evidence that Noble received any treatment during a significant

portion of the relevant period.  And when Noble did receive medical treatment

during the period, his physical examinations showed only "mild signs of

impairment." *Id.*  The ALJ relied on treatment notes showing that Noble had no

loss of sensation in his spine, was able to ambulate with knee braces, and had a

normal range of motion and strength in his extremities.  Even though some

treatment notes showed that Noble's lumbar spine was painful on flexion and

extension, the ALJ noted that Noble had been wearing a back brace on a daily

basis and one of Noble's doctors had opined that this practice was likely

contributing to his symptoms.  The ALJ acknowledged that Noble was using a

cane but concluded that the "evidence indicates that the medical necessity of the

. . . cane is questionable." *Id.*

The ALJ considered the VA's rating decision in assessing Noble's residual

functional capacity, noting the VA had determined that "Noble has a disability

rating of 80." *Id.* at 23.  But the ALJ concluded that he was not bound by the

findings in the VA's rating decision.  He explained that the VA's opinion that

Noble was disabled went to an issue reserved to the Commissioner and could not

"be given special significance." *Id.* at 24.  The ALJ acknowledged that he

nonetheless had to consider the VA's opinion in assessing Noble's residual

9

functional capacity and stated that he had "fully considered" it, including the disability rating of 80%. *Id.* The ALJ gave "little weight" to the VA's determination, however, "due to its inconsistency with the objective medical evidence and the other opinion evidence of record." *Id.*

Based on the residual functional capacity assessment, the ALJ determined that Noble was unable to perform his past relevant work. At the fifth step, the ALJ found that Noble was not disabled because there were a significant number of jobs in the national economy that he could perform. As a result, the ALJ denied Noble's claim for disability benefits.[10]

## C.    The District Court's Review

Noble, represented by counsel, then filed an action in federal district court asking the court to reverse the Commissioner's decision. Noble asked the district court to remand the case to the Commissioner because the ALJ had failed to give "great weight" to the VA's determination that he was disabled. Doc. 22 at 5. The magistrate judge affirmed the Commissioner's decision, explaining that the ALJ considered the VA's determination and gave "valid reasons for discounting" it.[11] Doc. 26 at 8. Noble appealed.

---

[10] Noble requested that the Appeals Council review the ALJ's decision, but the Appeals Council denied his request for review.

[11] The parties consented to a magistrate judge conducting all proceedings in the case. *See* 28 U.S.C. § 636(c)(1).

10

## II.    STANDARD OF REVIEW

When, as here, an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review the Commissioner's decision to determine whether it is supported by substantial evidence, but we review *de novo* the legal principles upon which the decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). Substantial evidence refers to "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore*, 405 F.3d at 1211. Our limited review precludes us from "deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Id.*

## III.    LEGAL ANALYSIS

A disabled individual may be eligible for disability insurance benefits under the Social Security Act. 42 U.S.C. § 423(a)(1). An individual is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." *Id.* § 423(d)(1)(A). To determine whether a claimant is disabled, an ALJ applies a five-step sequential

11

evaluation process and considers whether the claimant:  (1) has engaged in substantial gainful activity during the relevant time period; (2) has a severe and medically determinable impairment or combination of impairments; (3) has an impairment or combination of impairments that satisfies the criteria of a "listing"; (4) can perform her past relevant work in light of her residual functional capacity; and (5) can adjust to other work in light of her residual functional capacity, age, education, and work experience.  *See* 20 C.F.R. § 404.1520(a)(4).

The ALJ followed this five-step framework in concluding that Noble was not disabled, and Noble does not argue that the ALJ erred in any particular step of the analysis.  Instead, he argues that the ALJ erred by failing to assign the VA's decision that he was disabled "great weight," and therefore his case must be remanded so that the Commissioner can reconsider his claim after giving proper weight to the VA's decision.  Appellant's Br. at 8.  This appeal requires us to decide what role another agency's decision that a claimant is disabled plays when an ALJ considers whether the claimant is disabled for Social Security purposes.

At the time of the ALJ's decision in this case, Social Security regulations specified that when the record before the ALJ included a decision from another government agency finding that the claimant was disabled, the other agency's determination was not binding on the ALJ.  *See* 20 C.F.R. § 404.1504 (2016) (explaining that "[a] decision by any governmental agency . . . about whether you

12

are disabled . . . is based on its rules" and "not binding on us"). After the ALJ's decision, the Social Security Administration amended the regulation to state that an ALJ would "not provide any analysis . . . about a decision made by any other governmental agency . . . about whether [a claimant is] disabled." 20 C.F.R. § 404.1504 (2020). Although under the new regulation the ALJ no longer analyzes the other agency's decision, the ALJ still must "consider[] all of the supporting evidence underlying the other governmental agency['s] . . . decision" that was placed in the record before the ALJ. *Id.* Because the new regulation does not apply to Noble's case, we do not take it into account or address it further.

Turning back to the earlier version of § 404.1504, the version at issue in this appeal, the Commission issued a ruling stating that "evidence of a disability decision by another governmental . . . agency cannot be ignored." SSR 06-03P, 2006 WL 2329939, at *2.[12] The ruling cautioned that because the standards the other agency applied may be different than the Social Security Administration's standards, the other agency's disability determination may have limited relevance. *Id.* Nonetheless, the ruling directed, an ALJ must "explain the consideration given to" a decision from another agency. *Id.*

---

[12] A Social Security ruling is an "agency ruling[] published under the authority of the Commissioner of Social Security" and is "binding on all components of the Administration." *Sullivan v. Zebley*, 493 U.S. 521, 539 n.9 (1990) (internal quotation marks omitted). Although we are not bound by a Social Security ruling, we do afford it deference. *See Fair v. Shalala*, 37 F.3d 1466, 1468-69 (11th Cir. 1994).

13

The regulation and ruling taken together tell us that the VA's decision was evidence that the ALJ had to consider, but the VA's decision did not require the ALJ to find that Noble was disabled. Indeed, Noble acknowledges that the VA's decision "remains non-binding on the Commissioner." Appellant's Br. at 7. But he argues that the ALJ erred all the same by failing to give "great weight" to the VA's decision. *Id.* at 4.

In a series of decisions, our Court and our predecessor court[13] addressed the role another agency's decision that the claimant is disabled should play in an ALJ's review of a claim for Social Security benefits. On this question, we find some tension in our precedent. On the one hand, we have at least one decision holding that another agency's disability determination is simply "a factor to be considered," and the ALJ may decline to follow the other agency's determination when more recent medical evidence in the record before the ALJ contradicts the other agency's disability finding. *Skeels v. Richardson*, 453 F.2d 882, 883 (5th Cir. 1972). On the other hand, we have decisions saying that another agency's finding that a claimant is disabled is entitled to "great weight"— a term that suggests the other agency's determination should be afforded some degree of deference. *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (internal

---

[13] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

quotation marks omitted); *DePaepe v. Richardson*, 464 F.2d 92, 101 (5th Cir. 1972). Before we can decide whether the ALJ appropriately considered the VA's decision that Noble was disabled, we must reconcile our seemingly fractured precedent regarding the weight an ALJ must afford such a decision.

## A.

To make sense of our precedent, we begin with a historical look at the previous decisions from our Court and our predecessor court addressing the role that a disability determination from another agency should play in the Commissioner's decision whether to award Social Security benefits. Then we address how our apparently inconsistent precedent may be reconciled.

## 1.

The earliest decision from our predecessor court addressing how an ALJ in a Social Security disability case should treat a decision from another agency finding that the claimant was disabled is *Hayes v. Celebrezze*, 311 F.2d 648 (5th Cir. 1963). In *Hayes*, the claimant, a World War I veteran who was receiving a disability pension from the VA, sought Social Security disability benefits. *Id.* at 650. After a hearing, the hearing examiner[14] determined that the claimant was not

---

[14] *See Nash v. Califano*, 613 F.2d 10, 14 (2d Cir. 1980) (explaining that ALJs were previously called hearing examiners).

disabled, explaining that the claimant could perform moderately strenuous activity, including sitting, standing, and walking. *Id.* at 651.

In reviewing the hearing examiner's decision, our predecessor court focused on whether the medical evidence before the examiner supported his assessment of the claimant's capacity. *Id.* at 653. The court concluded that there was "nothing" in the medical record to support the hearing examiner's conclusion that the claimant was able to perform moderately strenuous activity. *Id.* The court then directed that on remand the parties would be permitted to supplement the record, and the hearing examiner should reach an entirely new decision after having considered the complete record. *Id.* at 654-55.

In a footnote, the court addressed how the hearing examiner should treat the VA's determination on remand. *Id.* at 655 n.6. After acknowledging that "the action of the Veterans Administration [was] not decisive," the court explained that given "the similarity of the statutory tests," the examiner "should at least evaluate" the VA's decision "to determine its significance." *Id.* Although *Hayes* established that a hearing examiner could not ignore another agency's decision finding that the claimant was disabled, the court did not explain what it meant to "evaluate" the "significance" of the other agency's decision.

In a later decision, our predecessor court reviewed a hearing examiner's treatment of another agency's decision that the claimant was disabled when all the

16

medical evidence before the hearing examiner also supported a finding of disability. *See Williams v. Finch*, 440 F.2d 613 (5th Cir. 1971). In *Williams*, the claimant for Social Security benefits was receiving VA disability benefits. *Id.* at 614. The hearing examiner determined that the claimant failed to prove he was disabled. *Id.* The court reversed on appeal, concluding that there was no substantial evidence to support the examiner's finding that the claimant was not disabled. *Id.* at 617. The court explained that four doctors had expressed opinions about the claimant's impairments, and all agreed that he was disabled, due either to hypertension, heart disease, or both. *Id.* at 615. In reversing, the court relied on the absence of evidence to support the examiner's finding that the claimant was not disabled. *Id.*

The court also observed that the VA had found that the claimant was disabled. *Id.* After acknowledging that the VA's decision was "not determinative of the issue of disability under the Social Security Act," the court described the VA's decision as "a strong saw in the wind in view of the [VA's] independent and positive findings of physical disability and *the complete absence of statements to the contrary*." *Id.* at 616 (emphasis added). Importantly, though, nothing in *Williams* addressed the weight to be afforded to another agency's decision finding disability when the record included medical evidence to the contrary.

17

Next, our predecessor court decided *Skeels*, which considered whether a hearing examiner erred in rejecting another agency's decision that the claimant was disabled when the record contained more recent medical evidence indicating that the claimant was not disabled. *See* 453 F.2d at 883. In *Skeels*, the claimant applied for Social Security benefits while receiving VA disability benefits. *Id.* After a hearing examiner denied the claimant's application for Social Security benefits, the claimant argued on appeal that the examiner erred in failing to give "full weight" to the VA's determination that he was 100% disabled. *Id.* The court rejected this argument and affirmed, explaining that the hearing examiner had sufficiently considered the VA's decision because the examiner had "acknowledged that [the claimant was] receiving 100% disability from the VA." *Id.* The court cautioned that the fact that the claimant was receiving VA benefits was "a factor to be considered but it [was] not controlling." *Id.* The court explained that the VA's determination must be "viewed in contrast to more recent medical examinations," which supported the hearing examiner's decision. *Id.* It emphasized that "the resolution of conflicts in the evidence is for the Secretary, not for the federal courts." *Id.*

A few months after deciding *Skeels*, in *DePaepe* the court said for the first time that a decision from another agency finding the claimant disabled was entitled to "great weight." 464 F.2d at 101. In *DePaepe*, the claimant sustained serious

18

injuries, including a skull fracture, when shrapnel struck him while he was serving in the Army during the Korean War. *Id.* at 93. Several years later, the claimant began experiencing serious symptoms including dizzy spells, severe headaches, periodic blackouts, and partial leg paralysis. *Id.* He filed for Social Security disability benefits. *Id.* In support of his claim, he submitted medical evidence from his treating providers, which showed that he suffered from both physical and mental impairments, and presented testimony about how the impairments affected his abilities. *Id.* at 94-98. The examiner concluded that the claimant was not disabled. *Id.* at 93-94.

On appeal the court reversed, identifying several defects in the examiner's decision. First, the examiner had failed to give any consideration to the claimant's testimony regarding his pain. *Id.* at 99. Second, the examiner had failed to consider the entire medical record by disregarding medical evidence that corroborated the claimant's claims of pain. *Id.* at 99-100.

After identifying these defects, the court noted that the examiner had failed to give "any consideration . . . to the fact that the VA had rated appellant as 100 percent unemployable," *id.* at 101, apparently because the VA's decision had not been included in the record before the examiner. *See id.* at 100 n.2. Although the VA's rating "was not binding" on the examiner, the court stated that it should have been considered and was "entitled to great weight." *Id.* at 100. Notably, the court

19

in *DePaepe* did not discuss *Skeels* and made no attempt to reconcile its statement that another agency's disability decision was "entitled to great weight" with *Skeels*'s holding that another agency's disability decision was a single piece of evidence to be considered and that it was for the hearing examiner to decide how to weigh such evidence when the record contained other, more recent evidence indicating that the claimant was not disabled.

After *DePaepe*, decisions from our predecessor court and our Court repeated *DePaepe*'s "great weight" language without addressing *Skeels*. We discuss two such decisions, *Rodriguez v. Schweiker*, 640 F.2d 682 (5th Cir. 1981), and *Brady v. Heckler*, 724 F.2d 914 (11th Cir. 1984), as examples.

In *Rodriguez*, our predecessor court reversed an ALJ's decision denying Social Security benefits to a claimant who was receiving VA benefits. *See Rodriguez*, 640 F.2d at 686. Before the ALJ, the claimant testified that he was unable to return to his previous work as a security guard or gas station attendant, and there was no medical evidence refuting his testimony. *Id.* at 684-85. The ALJ found that the claimant was credible but determined that he was not disabled because he could return to his previous work. *Id.* at 685. On appeal the court reversed, explaining that the ALJ had ignored the claimant's credible testimony that he could not return to his previous jobs and emphasizing that "nothing in the medical evidence refute[d]" the claimant's testimony. *Id.*

20

The court noted that the ALJ had "mentioned" the VA's decision that the claimant was disabled but had "obviously refused to give it much weight." *Id.* at 686. Observing that the VA rating was "certainly not binding," the court, citing to *DePaepe*, declared that the VA's decision "should be considered and is entitled to great weight." *Id.* The court did not mention *Skeels*. Although *Rodriguez* directed that an ALJ must give great weight to another agency's decision that a claimant is disabled, it did not address what it meant to give great weight, much less how the ALJ should treat the other agency's decision when—as in this case—the record before the ALJ included more recent medical evidence that refuted the other agency's decision.

A few years later, in *Brady*, our Court reviewed an ALJ's decision denying a claimant Social Security benefits after the VA had determined that he was disabled, again repeating the "great weight" language. 724 F.2d at 921 (internal quotation marks omitted). In *Brady*, the claimant testified before the ALJ that he suffered from frequent dizzy spells, breathing problems, and occasional chest pain. *Id.* at 916. His testimony was corroborated by a statement from his wife and supported by his medical records. *Id.* at 915-16. The ALJ nonetheless denied the claimant's application for benefits, concluding at step two of the sequential-evaluation framework that the claimant had no severe impairment. *Id.* at 917.

21

We reversed, concluding that substantial evidence did not support the ALJ's conclusion that the claimant suffered from no severe impairment. *See id.* at 921. We explained that an impairment was not severe when it was "a slight abnormality which has such a minimal effect on the individual that it could not be expected to interfere" with his ability to work. *Id.* at 920. The claimant introduced evidence showing that he suffered from several debilitating conditions, including pericarditis (inflammation of the fibrous sac that surrounds the heart), hypoglycemia, and possible emphysema. *Id.* at 915, 921. We explained that these conditions "together create more than a slight abnormality." *Id.* at 921. Because substantial evidence did not support the ALJ's conclusion that the claimant had no severe impairment, we remanded the case and directed the ALJ to consider the next steps in the sequential evaluation framework. *See id.*

We also noted, seemingly in passing, that the claimant was receiving benefits from the VA. *Id.* After acknowledging that the VA's disability determination was not binding, we described it as "evidence that should be given great weight." *Id.* (internal quotation marks omitted). Given the procedural posture of the case, we did not address what weight the ALJ should give to the VA's decision on remand when considering the claimant's residual functional capacity and whether he could perform his past work or other work in the national economy. We also had no occasion to address the effect of evidence contrary to

22

the VA's decision.  *See id.*  Since *Brady*, nearly 30 years ago, we have not addressed in a published opinion whether an ALJ adequately considered a disability decision from the VA or another agency.

## 2.

At first blush, our precedent appears to be in conflict.  *Skeels* established that an ALJ may decline to follow another agency's decision finding a claimant disabled so long as the ALJ considered that decision.  *See* 453 F.2d at 883.  Yet *DePaepe* and later cases relying on it directed that the other agency's disability finding is "entitled to great weight," seeming to suggest that an ALJ's authority to depart from the VA's determination is more limited.  *See* 464 F.2d at 101.

When confronted with an apparent inconsistency in our precedent, we are "obligated, if at all possible, to distill from apparently conflicting prior panel decisions a basis of reconciliation and to apply that reconciled rule." *United States v. Hogan*, 986 F.2d 1364, 1369 (11th Cir. 1993).  If the precedent cannot be reconciled, our prior panel precedent rule dictates that we follow the earlier decision.  *See Cohen v. Office Depot, Inc.*, 204 F.3d 1069, 1072 (11th Cir. 2000).

We can resolve the apparent tension between *Skeels* and *DePaepe*.  *Skeels* recognized that the VA's determination that a claimant was disabled was a single piece of evidence that a hearing examiner should weigh against other evidence—in that case, medical examinations of the claimant conducted after the VA's decision.

23

*Skeels* thus teaches that an ALJ may decline to follow another agency's disability decision on the ground that the decision is contradicted by more recent medical evidence. When we look at the context in which we made the "great weight" statement in *DePaepe*, we see that it was in circumstances where the hearing examiner failed to "give *any* consideration in his findings to the fact that the VA" had determined that the claimant was disabled. 464 F.2d at 101 (emphasis added). Without more, the statement tells us only that an ALJ must consider and discuss the VA's findings. Importantly, *DePaepe* and its progeny did not address whether an ALJ is required to defer to the VA's disability determination when there is contradicting medical evidence in the record. *See, e.g.*, *Brady*, 724 F.2d at 921 (remanding because the ALJ erred in concluding that the claimant's impairments were not severe; mentioning the VA's disability decision only in passing); *Rodriguez*, 640 F.2d at 685 (vacating and remanding because the ALJ erred in ignoring the claimant's credible testimony that he could not return to his previous job when "nothing in the medical evidence refute[d]" the claimant's testimony). By recognizing that an ALJ must discuss a decision from another decision finding the claimant disabled but may refuse to follow the other agency's decision when the record contains more recent medical evidence supporting a conclusion that the

24

claimant is not disabled, we can resolve the apparent conflict between *Skeels* and *DePaepe*.[15]

Requiring an ALJ to consider and discuss another agency's findings is consistent with *DePaepe's* statement that the VA's decision must be given "great weight" because it requires an ALJ to give a special type of consideration to such evidence. In general, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The "great weight" standard functions as an exception to this general rule by requiring an ALJ to discuss another agency's decision finding the claimant disabled.

Harmonizing *Skeels* and *DePaepe* in this way also is consistent with the relevant regulations and the Commissioner's rule in place at the time of the ALJ's decision here; they indicated that an ALJ must consider the VA's decision but is not bound by it. *See* 20 C.F.R. § 404.1504 (2016) (explaining that a decision by the VA is "not binding on us"); SSR 06-03P, 2006 WL 2329939, at *2 (stating that "evidence of a disability decision by another governmental . . . agency cannot be

---

[15] Even if the tension in our precedent could not be reconciled, however, we would be bound to follow *Skeels* because it is the earlier decision. *See Cohen*, 204 F.3d at 1072. We acknowledge that before deciding *Skeels* our predecessor court decided two Social Security cases in which the VA had found the claimant to be disabled. But in both those cases, the hearing examiner failed to discuss the VA's decision. Neither addressed the question in *Skeels*—whether an ALJ may reject another agency's disability determination on the ground that it was contradicted by more recent medical evidence. *See Williams*, 440 F.2d at 616; *Hayes*, 311 F.2d at 655 n.6.

ignored"). In addition, our interpretation respects that the question of whether a claimant is disabled is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(d)(1) (recognizing that issue of whether a claimant is disabled is reserved to the Commissioner). If the "great weight standard" meant that an ALJ was required to follow the other agency's decision that the claimant was disabled even when the medical evidence indicated to the contrary, that would be tantamount to telling the Commissioner that he had to follow the other agency's determination, which would impinge on the Commissioner's authority to determine whether a claimant is disabled.

After resolving the tension in our precedent, we conclude that it directs courts to consider two questions in deciding whether an ALJ who declined to follow another agency's decision that a claimant was disabled nevertheless properly considered that decision. First, the court must ask whether the ALJ's decision shows that she considered the other agency's decision. *See DePaepe* 464 F.2d at 101. If the ALJ's decision does not discuss the other agency's decision, the case must be remanded to the Commissioner for consideration of the other agency's decision. But if the ALJ discussed the other agency's decision, the court moves on to the second step of the analysis: whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision.

26

*See Skeels*, 453 F.2d at 883.  If there is substantial evidence in the record, then the ALJ's decision should be affirmed.  *Id.*

**B.**

With this understanding of our precedent in mind, we now turn to whether the ALJ erred in this case.  We discern no error because (1) the ALJ's decision shows that he considered the VA's decision and (2) substantial evidence, in the form of more recent medical evidence, supports the ALJ's decision not to follow the VA's decision that Noble was disabled.

First, the ALJ's decision on its face shows that the ALJ considered the VA's decision.  The ALJ explained that the VA's determination that Noble was disabled was "inconsisten[t] with the objective medical evidence."  Doc. 15-2 at 24.  As a result, this case is not like *DePaepe*, where the ALJ erred by failing to give any consideration to the VA's decision.[16]  *See* 464 F.2d at 101.

Second, substantial medical evidence in the record conflicted with the VA's decision.  The ALJ explained that the VA's decision was inconsistent with the "objective medical evidence" in the record and resolved this conflict by crediting

---

[16] Noble argues that the ALJ's discussion of the VA's decision was "not exactly accurate," Appellant's Br. at 6, because the ALJ stated that the VA found that Noble had an 80% disability rating while failing to mention the VA's separate determination that Noble was entitled to benefits at a 100% rate because he was "unable to work due to [his] service[-]connected disability/disabilities."  Doc. 15-8 at 91.  Even if the ALJ could have been more precise in describing the VA's decision, the ALJ's decision shows he understood that the VA found Noble to be disabled.

27

that evidence.  Doc. 15-2 at 24.  Substantial evidence supports the ALJ's

conclusion because the medical evidence in this case, including physical

examinations and diagnostic imaging that postdated the VA's decision, showed

that Noble experienced only mild limitations due to his back and knee pain and

thus had a residual functional capacity that would allow him to perform sedentary

work with certain restrictions.[17]  *Id.* at 22.  Because the VA's decision that Noble

was disabled conflicted with more recent medical evidence in the record about

Noble's residual functional capacity, it was up to the ALJ to resolve this conflict.

*See Skeels*, 453 F.2d at 883.

To support his argument that the ALJ failed to appropriately consider the

ALJ's decision, Noble relies on our unpublished decision in *Brown-Gaudet-Evans*

*v. Commissioner of Social Security*, 673 F. App'x 902 (11th Cir. 2016).  We are

not bound by this unpublished case.  *See* 11th Cir. R. 36-2; *see also Searcy v. R.J.*

*Reynolds Tobacco Co.*, 902 F.3d 1342 (11th Cir. 2018) ("Unpublished cases do not

constitute binding authority and may be relied on only to the extent they are

persuasive.").  And we do not find *Brown-Gaudet-Evans* to be persuasive because

it did not address the situation before us.  *Brown-Gaudet-Evans* considered

whether an ALJ erred when he gave only a single reason for rejecting the VA's

---

[17] Notably, Noble has raised no argument on appeal that substantial evidence does not support the ALJ's conclusions about the medical evidence or that he could complete sedentary work with additional restrictions.

28

decision:  that the VA applied a different standard to determine whether the claimant was entitled to disability benefits.  We reversed, explaining that the ALJ was not required to give the VA's decision "controlling weight" but on remand was required to give "specific reasons" if he discounted it.  *Id.*

Here, the ALJ did not reject the other agency's decision simply because the VA applied a different standard to determine whether Noble was disabled.  Instead, the ALJ explained that the VA's decision was contradicted by more recent objective medical evidence in the record.  So, even if *Brown-Gaudet-Evans* were binding authority, it would not help Noble.

## IV.   CONCLUSION

For the reasons above, we affirm the Commissioner's decision to deny Noble benefits.

**AFFIRMED.**

29