[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-14331
Non-Argument Calendar

_____

D.C. Docket No. 8:19-cv-01077-PDB

FRANK MALDONADO,

                                        Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(July 8, 2021)

Before JILL PRYOR, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

Frank Maldonado disagrees with the SSA's decision that he is not disabled. His application for disability benefits was denied at the initial level and after a hearing, and the district court affirmed. Maldonado now argues that the SSA did not give proper weight to his Veteran's Affairs disability ratings and associated evidence. Because the ALJ considered those ratings and its decision was supported by substantial evidence, we affirm.

I.

Maldonado filed for disability insurance benefits in November 2015, alleging that he had been disabled starting in July 2013. The "illnesses, injuries or conditions" he alleged included "Screws in Right Hand," "Cervical back injury," "Screws in Both knees," "PTSD," "Arthritis in back and knees," "Diabetes," and "Burning mouth Syndrome." The SSA denied his application at the initial level, and also on reconsideration.

Maldonado requested a hearing before an administrative law judge. Among the filings Maldonado placed before the ALJ were records concerning his VA disability ratings. One filing showed that the VA evaluated his PTSD and major depressive disorder to be 70 percent disabling back in October 2015. The reasons that evaluation gave for its rating included "[d]ifficulty in adapting to stressful circumstances," "[d]epressed mood," and "[o]ccupational and social impairment with reduced reliability and productivity." Another evaluation from the VA in

2017 found him to be temporarily 100-percent disabled "for status post anterior cruciate ligament reconstruction" from September to December 2016. Also in the filings were records from the VA medical system.

The ALJ hearing took place in May 2018. At the end of the hearing, when the ALJ gave the vocational expert a hypothetical, it included Maldonado's physical impairments but did not mention his asserted mental impairments. The vocational expert testified that such a hypothetical individual would be able to work in a variety of jobs.

The ALJ denied Maldonado's application in August 2018, finding him to not be disabled. In particular, the ALJ stated that it "considered the Veterans' Affairs disability ratings contained in the file," and specifically cited to the exhibits containing both the 2015 and 2017 ratings. The ALJ noted that this determination by another governmental agency can be used as evidence of disability, and gave the ratings "some weight." Still, the ALJ found that Maldonado's "limitations do not render the claimant incapable of performing any and all work activity under the Social Security Administration regulations." The ALJ concluded that "the claimant has the above residual functional capacity," and stated that its capacity finding was "supported by the medical evidence of record" and "the claimant's statements and testimony." Maldonado asked for review of the ALJ's decision, but the Appeals Council denied his request.

That brought Maldonado to the district court, where he argued that the SSA's decision was "not supported by substantial evidence." Specifically, Maldonado argued that the ALJ "fail[ed] to adequately explain why he rejected the individual VA disability rating of 70% due to PTSD." The district court disagreed. It found that the Commissioner's decision was supported by substantial evidence, and affirmed it.

This is Maldonado's appeal.

## II.

"In social security cases where the ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (alterations adopted) (internal quotation marks omitted). "We review de novo the legal principles upon which the ALJ relied, but we are limited to assessing whether the ALJ's resulting decision is supported by substantial evidence." *Id.* at 1266–67. Because "our standard of review in a Social Security case is the same as the one that governs the district court, we owe the trial court's decision no deference." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

## III.

On appeal, Maldonado argues that the SSA's decision should be reversed because the ALJ failed to give appropriate weight and consideration to a 2015

4

disability benefits questionnaire that the VA relied on in determining his disability rating due to PTSD.   Maldonado acknowledges that he could have obtained the questionnaire and submitted it for consideration by the ALJ and did not do so, but he argues that it was the duty of the ALJ to fully develop the record.  We need not address this argument, because he failed to raise it at the district court.  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004).  In any event, the ALJ's duty to develop the record is not boundless—and the record contained "sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007).

To the extent that Maldonado argues that the ALJ did not give due consideration to the VA disability rating, that argument is also a non-starter.  We have explained that district courts must "consider two questions in deciding whether an ALJ who declined to follow another agency's decision that a claimant was disabled nevertheless properly considered that decision." *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1330 (11th Cir. 2020).  First, "the court must ask whether the ALJ's decision shows that she considered the other agency's decision." *Id.* Then, "if the ALJ discussed the other agency's decision, the court moves on to the second step of the analysis: whether substantial evidence in the record supports the ALJ's decision to depart from the other agency's decision." *Id.*

Here, the ALJ's decision shows that she considered the VA evaluations— she stated that she had considered Maldonado's VA disability ratings, acknowledged that the VA had found Maldonado to be 90–100 percent disabled based on various conditions including PTSD and major depressive disorder, and cited to both the 2017 and the 2015 VA evaluations. The ALJ also stated that she had carefully considered the impairments on which the VA disability rating was based and had given the VA assessments and ratings some weight in determining Maldonado's residual functional capacity. The ALJ also discussed the medical evidence in the record related to Maldonado's PTSD in some detail in step two of the disability analysis (considering the severity of the claimant's impairments) and concluded that his PTSD caused only mild limitations in functioning. The ALJ stated that she had incorporated her detailed mental function analysis into her assessment of Maldonado's residual functional capacity. Although the ALJ found that the medical evidence indicated that Maldonado had "significant limitations" due to his various impairments, she ultimately concluded that those limitations did not render him incapable of performing any work at all under SSA regulations.

And to the extent the ALJ's subsequent decision is at odds with the VA evaluations, it was based on substantial evidence in the record. "Substantial evidence as to the Secretary's factual findings is more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would

accept as adequate to support a conclusion.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).  Maldonado's medical records show that although Maldonado reported having some problems due to PTSD and depression, he also consistently reported responding well to medications.  For example, during a psychiatric consultation near the time of the alleged disability onset date in 2013, Maldonado reported problems with anger management, lack of sleep, nightmares, poor memory, and trauma, but he also stated that his conditions were responding to medication. Maldonado reported that his anger management issues were "up and down"; he still became angry when people were rude or inconsiderate and sometimes yelled at people, but he denied any issues with driving or road rage.  He reported that he was sleeping 3–5 hours per night without his C-PAP or 6–7 hours if he used the machine, and that his nightmares were "pretty much under control."  The treating provider described Maldonado's thought processes as "[m]ostly linear, organized, logical, goal directed and relevant," and his cognition as intact, alert and oriented with some deficits in short-term memory (recalling 2/3 words at 1 minute and 5 minutes).  Maldonado refused to participate in psychotherapy for his PTSD and declined to discuss it further.

In February 2014, Maldonado visited the same VA Hospital and received a renewed diagnosis of chronic PTSD and unspecified depressive disorder.  At the

time, he stated that he was happy with his current medication regimen, and that his sleep and appetite were "good." The physician noted that although Maldonado described his mood as depressed, he did not suffer any excessive anhedonia, guilt or worthlessness, worry or preoccupations, mania or hypomania, delusions or perceptual disturbances, or suicidal or homicidal ideation, intent, or plan; his registration and short-term memory were intact, and he displayed fair insight and good judgment.

Notes from a 2015 psychiatry visit say that Maldonado "has had fairly good response to psychopharmacologic treatment with decrease in anxiety and depression, decreased irritability." The physician noted that Maldonado continued to have difficulty with insomnia and nighttime arousals, but that his nightmares had responded well to medication and Maldonado reported getting enough sleep to feel fairly rested during the day. At that same visit, he reported that his mood was "fairly stable," with intermittent brief episodes of "feeling blue" but showing significant improvement since his initial visit with that physician in March 2014. His memory and cognition "appeared to be grossly intact," and his insight and judgment were described as "[g]ood." Maldonado also reported that he had completed a college degree program in 2015.

Also in the record is the opinion of Dr. Conger—a state agency psychologist—who found that there was "no indication of a severe mental

impairment" in 2016. Dr. Conger further opined that Maldonado "remains fully functional from a mental perspective," that he "is able to relate in a socially appropriate manner in general," and that "[b]ased on the totality of evidence, he appears to be primarily limited by his physical condition and there is no indication of a severe mental impairment at this time."

Maldonado himself reported following spoken instructions well and that he could still drive a car and motorcycle and go grocery shopping. And at the hearing before the ALJ, Maldonado indicated that medications have been "helping with the anger issues."

In short, substantial evidence in the record supports the ALJ's conclusion that despite the VA's disability rating of 70 percent due to Maldonado's PTSD and depression, those conditions did not cause him to be unable to work under SSA regulations.  That is the beginning and end of our analysis—our "limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). If substantial evidence in the record supports the ALJ's decision, "then the ALJ's decision should be affirmed." *Noble*, 963 F.3d at 1330. Accordingly, we affirm the Commissioner's decision denying Maldonado's application for Social Security disability benefits.

**AFFIRMED.**

9